# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| STEPHANIE LEWIS, )<br>)<br>    Plaintiff, )<br>)<br>and )<br>)<br>INTREPID INSURANCE COMPANY, )<br>)<br>    Intervening Plaintiff, )<br>)<br>v. )<br>)<br>PATRICK HEGGIE, Administrator )<br>ad Litem of the Estate of Samuel B. )<br>Heggie, Jr., )<br>)<br>    Defendant. ) | Case No. 3:24-cv-00501<br>Judge Aleta A. Trauger |

## MEMORANDUM and ORDER

In this facially simple premises liability lawsuit, plaintiff Stephanie Lewis seeks to recover damages incurred when she tripped and fell on the front walkway of Samuel B. Heggie, Jr.'s home while she was delivering a pizza in February 2020. Samuel Heggie having died during the pendency of this lawsuit, the plaintiff now proceeds against the Estate of Samuel B. Heggie, Jr., represented by Patrick Heggie as the Administrator ad Litem. For simplicity, the court nonetheless refers to Samuel Heggie herein as the "defendant." The case is set for trial on January 5, 2026.

Now before the court are the plaintiff's Motion in Limine No. 7 to exclude the defendant's liability expert, Brian Grieser, and the defendant's Motion in Limine to Exclude Testimony of Plaintiff's Expert, David Johnson. (Doc. Nos. 84, 98.) For the reasons set forth herein, the court, in the exercise of its discretion, will grant both motions.

## I. LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Thus, aside from establishing a witness's qualifications as an expert, the proponent of expert testimony must persuade the court by a preponderance of the evidence that the expert's testimony is both relevant and reliable. *United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

Regarding reliability, the Supreme Court in *Daubert* articulated a nonexclusive list of considerations for assessing a scientific expert's testimony, including (1) whether the theory or methodology has been or can be tested; (2) whether it has been subjected to peer review; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–94. In *Kumho Tire Co. v. Carmichael*, the Court clarified that the reliability inquiry *Daubert* outlined covers not just scientific testimony, but also expert testimony based on "technical" and "other specialized knowledge." 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702). The Supreme Court also recognized that, in such cases, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150; *see also Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001) (explaining that the *Daubert*

factors "are not dispositive in every case" and should be applied only "where they are reasonable measures of reliability of expert testimony").

Finally, the threshold consideration in all evidentiary issues is relevancy. Fed. R. Ev. 402. Under Rule 401, evidence is relevant if it has "any tendency to make a fact of consequence more or less probable than it would be without the evidence" and is "of consequence in determining the action." Relevant evidence is admissible; irrelevant evidence is not. Fed. R. Evid. 402. To determine whether an expert's testimony will assist the trier of fact, courts must "look to 'whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) (quoting Fed. R. Evid. 702, advisory committee's note to 1972 proposed rules). Accordingly, "[a] district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." *Id.* (citation omitted).

Notably, Rule 702 was amended in 2023 to emphasize that the *court* is entrusted with determining whether the admissibility criteria have been established, rather than treating them as "questions of weight" to be determined by the factfinder. Fed. R. Evid. 702 advisory committee's notes to 2023 amendment; *see also* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."). However, "nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection." Fed. R. Evid. 702 advisory committee's notes to 2023 amendment. "The task for the district court in deciding whether an expert's opinion is reliable is

not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345 (6th Cir. 2024) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008)).

## II. DEFENDANT'S MOTION

It is undisputed that the plaintiff tripped on a vertical displacement—*i.e.*, a raised lip—of approximately 0.8 inches in the front walkway leading from Heggie's driveway to the front door of Heggie's house. (*See* Doc. No. 67-1, Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts No. 16.) It is also undisputed that Heggie was aware of the condition of the front walkway. The parties dispute whether the defect in the walkway (or sidewalk, as the parties refer to it) created an unreasonably dangerous condition. The court previously denied summary judgment on this issue. (*See* Doc. Nos. 74, 75.)

### A. The Parties' Arguments

The plaintiff's proposed expert, David Johnson, Senior Forensic Engineer with Johnson Health and Safety, LLC, prepared an expert report in which he offers the following opinions:

• Pedestrian falls on sidewalks are often the result of the failure of the property owner or other responsible person to maintain the sidewalk in a reasonably safe condition.

• If cracks in sidewalks are greater than ¼ inch, this can create a trip hazard because it is unexpected; if such variances are found, repairs should be made.

• Unnoticed changes of elevation are known trip hazards as it is difficult for a pedestrian to perceive but significant enough to catch a foot or toe in stride and result in a trip and fall, as was the case in Ms. Lewis' incident.

• The 0.8-inch change in elevation of the sidewalk leading to the front door of Mr. Heggie's residence was more than twice as high as the typical minimum toe clearance during mid stride and more than three times higher than the maximum change in elevation allowed by safety standards and codes.

• The defect or 0.8-inch upheaval in the concrete sidewalk that caused Ms. Lewis to trip and fall represented an abrupt, vertical change in elevation that was without warning and that was not consistent with the remainder of the sidewalk.

• The walkway would be considered substandard and hazardous by ANSI and ASTM standards.

• Areas for foreseeable pedestrian traffic were not clearly marked where potential trip hazards existed.

• The walkway was not being maintained free from recognized hazardous conditions in conformance with national consensus safety standards.

• The walkway was not being maintained in a safe condition free from recognized hazards to comply with adopted property maintenance code in Sumner County.

• Reasonable care or effort was not made by Mr. Heggie to ensure the sidewalk at his home was safe for pedestrian traffic.

• It was obviously feasible to repair the subject trip danger as it was completed by Mr. Heggie after Ms. Lewis' incident to provide a sidewalk that was "smoothed over" or more planar, flush, and even.

• Based upon my understanding of the incident, review of case materials, depositions and photographs and measurements of the sidewalk upheaval, as well as the aforementioned safety standards and adopted property maintenance code, it is my opinion that the abrupt sidewalk change in elevation was unsafe and unreasonably dangerous at the time of Ms. Lewis' incident.

(Johnson Expert Report, Doc. No. 67-4 at 10–12.)[1]

The defendant does not dispute Johnson's qualifications as an expert, *per se*.[2] Instead, he

---

[1] The defendant did not file this Report with his motion, but it was filed in connection with the parties' summary judgment motions. The plaintiff, in accordance with L.R. 39.01(c)(5)(E) and this court's practice, filed the Expert Witness Statement for David Johnson along with her Response to the defendant's Motion to Exclude. (*See* Doc. No. 1151.) This Statement does not differ substantially from the Report, except that Johnson omits reference to any of the standards discussed below, *except* the ASTM F 1637.

[2] The court has no means of assessing those qualifications. The plaintiff does not appear to have provided a *curriculum vitae* or any summary of Johnson's qualifications in either his Report or his Expert Witness Statement. His Report states that he is a Senior Forensic Engineer, and his signature is accompanied by the initials "P.E., CSP, CXLT." (*See* Doc. No. 67-5 at 12.) A Google search indicates that these stand for Professional Engineer, Certified Safety Professional, and Certified XL Tribometrist.

argues that Johnson's opinions are neither helpful to the trier of fact nor reliable. (Doc. No. 98 at 1.) In particular, he contends that expert testimony is not necessary to assist a jury in deciding whether a residential sidewalk is unreasonably dangerous, because this is a matter well within the common knowledge of a typical layperson. He characterizes Johnson's opinions as largely concerning matters of common sense dressed up with technical language, or "common experience gilded by the expert's credentials." (*Id.* at 11 (citation omitted).) As for reliability, the defendant contends that (1) many of Johnson's opinions consist of verbatim quotations from insurance company websites that Johnson found doing a Google internet search that Johnson himself characterized as "doing some research on some different aspects of trip-and-fall cases" (*id.* at 14 (quoting Doc. No. 98-1 at 12–13, Johnson Dep. 50–51)); and (2) Johnson's references to various "safety standards" and "codes" are unreliable, insofar as he admits that none of the standards he cites apply to single-family residences, and none has been adopted by any Tennessee court or Sumner County authority (*id.* at 15–23).

In response, the plaintiff argues that Tennessee courts have held that whether a sidewalk is unsafe can be established by expert testimony (Doc. No. 127 at 2 (citing *Burgess v. Harley*, 934 S.W.2d 58, 64 (Tenn. Ct. App. 1996)); that the ASTM F1637 – Standard Practice for Safe Walking Standards is a "national standard" that can "provide . . . guidance in evaluating the reasonable conduct of parties," irrespective of whether it has been adopted by Sumner County (*id.* at 2–3 (citing *Miller v. Berry*, 457 S.W.2d 859, 862–63 (Tenn. Ct. App. 1970)); that the other codes referenced by Johnson were simply intended to show that "there is universal acceptance that an abrupt change in elevation on a walking surface in excess of 1/4 inch is considered an unsafe condition" (*id.* at 4); that there is no basis for discounting his opinions as unreliable simply because he accessed the authority on which he relied through a Google search; and that the International

Residential Code, which incorporates by reference the International Property Maintenance Code, has been adopted by Sumner County, applies here, and specifically states, "All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair and maintained free from recognized hazardous conditions" (*id.* at 5–6).

**B.  Discussion**

1.  *Relevance*

While expert testimony might in some cases be appropriate to prove that a sidewalk condition is unreasonably dangerous,[3] federal and state courts in Tennessee and elsewhere have found that expert testimony is not required to "prove the existence of a dangerous condition in a premises liability case" when the case involves "ordinary negligence." *Steele v. Primehealth Center, P.C.*, No. W2015-00056-COA-R3-CV, 2015 WL 9311846 (Tenn. Ct. App. Dec. 22, 2015); *see also, e.g.*, *Stanley v. Denver Mattress Co.*, No.1:21-cv-00295-TAV-CHS, 2024 WL 4018180 (E.D. Tenn. June 18, 2024) (granting motion to exclude expert testimony in premises liability case involving simple negligence in a slip and fall case involving an allegedly unsafe condition); *Ewers v. Lowe's Home Ctrs., LLC*, No. 1:18-cv-554, 2019 WL 4345684 (S.D. Ohio Sept. 12, 2019) (same); *Torres v. Carnival Corp.*, No. 12-cv-23370-JLK, 2014 WL 3548456 (S.D. Fla. July 17, 2014) (same), *aff'd*, 635 F. App'x 595, 600 (11th Cir. Nov. 20, 2015).

In *Stanley*, the plaintiff's expert sought to testify that the protruding floor outlet the plaintiff had tripped over was a "tripping hazard that violated applicable code and nationally recognized

---

[3] The plaintiff's citation to *Burgess v. Harley*, 934 S.W.2d 58 (Tenn. Ct. App. 1996), however, does not establish this point. That case held that expert testimony is appropriate to prove that a roadway maintained by a municipality is unreasonably dangerous, and the expert in that case, a safety engineer, testified about such matters as the elevation changes on either side of the allegedly unsafe intersection and the stopping distance required for a vehicle approaching the intersection at 45 mile per hour. *See Burgess*, 934 S.W.2d at 64.

[safety] standards" and that it was not "reasonably conspicuous." *Stanley*, 2024 WL 4018180, at *1. The court found that the "common experience" of the jury as fact finder would be "sufficient to determine whether the electrical outlet constituted a dangerous condition. *Id.* at *2. The Eastern District relied on other opinions similarly holding that an expert's opinion in a premises liability case may be excluded where the "opinion is based on no more than common lay experience gilded by the expert's credentials." *Id.* (citing *Jones v. H. G. Hill Realty Co.*, No. M1999-00633-COA-R3-CV, 2000 WL 863136, at *9-10 (Tenn. Ct. App. June 29, 2000); *Ewers*, 2019 WL 4345684, at *3).

In *Ewers*, the plaintiff had tripped over a cable securing lawn mower equipment. The proffered expert sought to testify that, among other things, the cable violated "pedestrian expectations and contributed to [the plaintiff's] fall"; the plaintiff's failure to detect the cable was "consistent with established visual scanning behaviors while walking and was not a cause of his fall"; the lack of contrast between the incident cable and concrete inhibited [the plaintiff's] ability to detect the cable"; and "Lowe's failure to prevent a tripping hazard from existing in a pedestrian path created a dangerous condition that contributed to [the plaintiff's] fall." *Ewers*, 2019 WL 4345684, at *3. The court found that this testimony would not assist the jury:

> Rather than providing assistance in a case in which the factual issues are complex, such as in a car crash case involving skid marks requiring mathematical calculations and reconstruction techniques, or a case in which a jury is called to determine whether exposure to a chemical caused a particular disease, Dr. Rider offers to enlighten the jury on such mundane principles as "pedestrian expectations" and "visual scanning behaviors while walking." Such testimony is—at best—superfluous and wholly unnecessary. The jurors are expected to possess sufficient practical knowledge of the world around them to understand the basic functions of walking and visual attention or inattention while walking, and do not require expert testimony to evaluate the credibility of Plaintiff's testimony and/or to apply the law to the facts presented to them.

*Id.* at *3. The court also noted that "[m]ultiple courts have concluded that, at least in the context of straightforward slip and fall cases such as this one, expert testimony is not necessary or helpful

under *Daubert* principles of 'helpfulness,' relevance, or 'fit.'" *Id.* at *4 (collecting cases).

In this case, too, although some of his opinions are dressed in the trappings of scientific jargon, Johnson essentially seeks to testify to matters that are wholly within the ken of ordinary jurors. For example, his conclusion that "[p]edestrian falls on sidewalks are often the result of the failure of the property owner or other responsible person to maintain the sidewalk in a reasonably safe condition" is nothing but a platitude. His assertions that a variance of greater than 1/4 inch is a "trip hazard" because it is "unexpected" and should therefore be repaired; that "unnoticed changes of elevation" are "difficult for a pedestrian to perceive" and therefore constitute "known trip hazards"; and that the lip at issue here was such an "abrupt" elevation change are all opinions about matters within the scope of ordinary individuals' experience. They do not require expert testimony. As another court has stated in a similar context:

> Walking. That is the action at the heart of this case. Walking is something almost all individuals understand. [The proposed expert] derives numerous conclusions from his analysis of the carpet, all to say that Plaintiff tripped because of a condition on the ground. His report states, "[W]hen walkways are improperly designed and maintained, pedestrians may be exposed to dangerous conditions." This is not the kind of assertion which requires expert testimony; it is neither a stretch nor even a hop of logic to say that humans may trip if they encounter an obstacle in their path. Jurors can easily understand the simple mechanics of walking and the various reasons one may fall, including tripping on a carpet."

*Torres*, 2014 WL 3548456, at *2.

Several of Johnson's opinions are based on the failure of the walkway to meet various international standards and codes,[4] including (1) the International Residential Code ("IRC"), which incorporates by reference the International Property Maintenance Code and had been adopted by Sumner County at the time of the incident; (2) the American Standards for Testing and

---

[4] The fact that Johnson's Expert Witness Statement addresses only the ASTM standard can be interpreted to mean that the plaintiff has abandoned reliance on the others. However, the court will address them anyway.

Materials (ASTM) F 1637-2013 Standard Practice for Safe Walking; (3) the American National Standard Institute ("ANSI") standard 1264.2-2006; (4) standards promulgated by the National Institute of Occupational Safety and Health ("NIOSH"); and (5) the International Code Council (ICC)/ANSI A117.1-2017-American National Standard for Accessible and Usable Buildings and Facilities.

In his deposition, Johnson conceded that the ANSI and NIOSH standards apply to workplaces, not residences. (*See* Doc. No. 98-1, Johnson Dep. 32–33, 39.) The ICC/ANSI standards to which he refers pertain to accommodations for persons with disabilities. (*See id.* at 39.) These standards are irrelevant in this case, which involves a private residence, and Johnson's reliance on them is misplaced and, moreover, will not assist the jury in determining whether the defendant was negligent.

The plaintiff contends that the IRC code has been adopted by Sumner County and so is clearly applicable. But she also acknowledges that the relevant code provision, which states, "All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair and maintained free from recognized hazardous conditions," "essentially [articulates] the same duty contained in Tennessee common law—*i.e.* a duty to maintain property in a reasonably safe condition." (Doc. No. 127 at 5–6 & n.4.) In other words, the standard contains nothing outside what the common law negligence standard of care establishes. An expert is not required to establish the common law negligence standard.

Finally, regarding the ASTM F 1637-2013 Standard Practice for Safe Walking, the plaintiff argues that the question of whether this standard has been adopted by Sumner County is irrelevant, because it is a national standard and provides a relevant guide for determining the reasonableness of the defendant's conduct in failing to repair the walkway. However, this is not a negligence *per*

*se* case. Although Johnson states in his Expert Witness Statement that this standard is a "reliable authority and used by engineers . . . to identify walkway safety hazards" (Doc. No. 115-1 at 3), he provides no basis for concluding that it establishes a general negligence standard in the Sumner County community or that the defendant should have been aware of, and complied with, that standard. The court finds that this standard, too, is irrelevant to the question of whether the defendant in this case exercised reasonable care.

### 2.    *Reliability*

The court finds that Johnson's opinions as a whole will not assist the jury in determining any fact at issue in this case. Moreover, insofar as he appears to have derived many of his opinions directly from insurance company websites, from which he quotes verbatim, and from a manual drafted by a lawyer and intended as litigation support in premises liability cases, those opinions do not rest on a reliable foundation. (*See* Doc. No. 98-1, Johnson Dep. 31–32, 45–52.)

As set forth above, under *Daubert*, courts assess the reliability of scientific testimony by considering such factors as (1) whether the [expert's] theory or methodology has been or can be tested; (2) whether it has been subjected to peer review; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–94. None of these showings has been made here. And, while *Kumho Tire* acknowledged that all of the *Daubert* factors may not be applicable in cases involving "technical" and "other specialized knowledge," 526 U.S. at 141, the plaintiff simply has not established that Johnson's proposed opinions are the "product of reliable principles and methods" or that they "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

### 3.    *Conclusion*

The court, in the exercise of its discretion, will exclude Johnson's testimony altogether as

unnecessary and irrelevant, because it will not assist the jury, and unreliable.

## III.  PLAINTIFF'S MOTION

The defendant seeks to offer the expert opinions of Brian Grieser, a consultant with Applied Safety + Ergonomics, a Rimkus Company, to rebut the testimony of the plaintiff's expert. He seeks to offer the following opinions:[5]

1. As Ms. Lewis approached the area of her fall, the subject condition would have been in her field of view and available to be seen.

2. Because of the contrast in color, texture, and depth related to the section of the concrete sidewalk that had settled, the subject condition would have been conspicuous and detectable against the neighboring unsettled concrete.

3. From a human factors perspective, it is reasonable to expect that a pedestrian will encounter pavement conditions that will need to be attended to during normal everyday walking.

4. Immediately prior to the incident, Ms. Lewis did not give sufficient attention to where she was walking, which contributed to her incident.

5. Had Ms. Lewis paid sufficient attention to the area where she was walking as she approached the settled pavement, she could have changed her gait or path to avoid tripping and falling on the subject condition.

6. Given that the subject condition would have been conspicuous and was a common condition, no additional warning was needed to inform Ms. Lewis of its presence.

7 . Mr. Johnson's opinions conflict with published research related to pedestrians successfully navigating sidewalks outdoors with elevation changes substantially greater than ¼-inch.

8. Mr. Johnson cited several standards in his report that were not applicable to the subject property and were unlikely to have been known by a homeowner such as Mr. Heggie.

---

[5] The plaintiff, likewise, did not file Grieser's Report with her Motion in Limine No. 7, but the Report was filed previously (by the defendant) in response to the plaintiff's Motion to Exclude Declaration of Brian Grieser, a motion filed in connection with the parties' summary judgment motions. The defendant, with his other pretrial filings (including responses to motions in limine) has now filed the Expert Witness Statement of Brian Grieser (Doc. No. 118-1). It does not differ substantially from his Report.

9. Mr. Johnson did not provide a basis in his report to indicate that the subject condition was a recognized hazard to a typical homeowner.

(Doc. No. 72-1 at 1–2.)

Having already found that Johnson's opinions will not assist the trier of fact, the court finds that Grieser's opinions 1–6 are excludable for the same reason. These opinions offer nothing that a reasonable jury could not determine on its own without the assistance of expert testimony. Opinions 7–9, the sole purpose of which is to rebut Johnson's testimony, are unnecessary, as the court has determined that Johnson will not be permitted to testify.

## IV. CONCLUSION AND ORDER

As set forth herein, both motions to exclude the opposing party's expert testimony (Doc. Nos. 84, 98) are **GRANTED**, and the testimony of both the plaintiff's proposed expert, David Johnson, and the defendant's proposed expert, Brian Grieser, will be excluded.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge